[No. 50151–3.   En Banc.   April 26, 1984.]

*In the Matter of the Personal Restraint of*
RONALD PIERCY, ET AL, *Petitioners.*

*Ronald Piercy* and *Kenneth Agtuca,* pro se.

*Kenneth O. Eikenberry, Attorney General,* and *Douglas D. Walsh, Assistant,* for respondent.

*Mitchell A. Riese* on behalf of Institutional Legal Services, amicus curiae for petitioners.

PER CURIAM.—The Court of Appeals, Division Three, certified the following question, raised in these consolidated personal restraint petitions, to this court:

> Where a prison inmate has been afforded procedural due process for disciplinary violations, must he be afforded the opportunity to personally appear before the Board of Prison Terms and Paroles pursuant to RCW 9.95.080 when it decides to deny him good time credits because of the disciplinary violations?

The answer is no. Accordingly, we dismiss the consolidated personal restraint petitions with prejudice.

Petitioners Ronald Piercy and Kenneth Agtuca are prisoners of the State of Washington, currently incarcerated in the United States Penitentiary at Marion, Illinois, and the Missouri State Penitentiary, respectively. Each was found guilty of disciplinary violations following a hearing before a prison disciplinary hearing committee. Prison superintendent recommendations that petitioners be denied good time credits followed. The Board of Prison Terms and Paroles (Board) adopted these recommendations, thereby denying petitioners good time credits. Petitioners were not afforded the opportunity to appear personally before the Board at the time it adopted the recommendations.

Petitioners do not contest the validity of their underlying convictions of disciplinary violations. Instead, they allege that the failure to afford them in–person hearings before the Board at the time it adopted the recommendations to deny them good time credits violated RCW 9.95.080 and

the due process clause.

RCW 9.95.080 provides:

> In case any convicted person undergoing sentence in the penitentiary, reformatory, or other state correctional institution, commits any infractions of the rules and regulations of the institution, the board of prison terms and paroles may revoke any order theretofore made determining the length of time such convicted person shall be imprisoned, *including the forfeiture of all or a portion of credits earned or to be earned, pursuant to the provisions of RCW 9.95.110,* and make a new order determining the length of time he shall serve, not exceeding the maximum penalty provided by law for the crime for which he was convicted, or the maximum fixed by the court. *Such revocation and redetermination shall not be had except upon a hearing before the board of prison terms and paroles. At such hearing the convicted person shall be present and entitled to be heard and may present evidence and witnesses in his behalf.*

(Italics ours.)

Petitioners argue that RCW 9.95.080, with its explicit requirement of an in–person hearing before the Board, applies to a decision to deny good time credits. The State, on the other hand, argues that RCW 9.95.080 applies only to a decision to revoke good time credits already earned, or to be earned in the future. It contends that a simple denial of good time credits is governed by RCW 9.95.070, which does not require in–person hearings before the Board.

█ An act must be construed as a whole, considering all provisions in relation to each other and, if possible, harmonizing all to insure proper construction of each provision. *Newschwander v. Board of Trustees of State Teachers' Retirement Sys.,* 94 Wn.2d 701, 707, 620 P.2d 88 (1980). Accordingly, it is necessary to place RCW 9.95.080 in context. RCW 9.95 governs prison terms, paroles, and probation. When a person is convicted of a felony, the trial court must sentence the person to the maximum statutory term. RCW 9.95.010. Within 6 months of the person's admission to prison, the Board will set a minimum term, which cannot exceed the maximum statutory term. RCW 9.95.040. The

Board may parole the prisoner after he has served the minimum term, less any credits for good behavior and diligence in work. Good time credits are limited to one–third of the minimum sentence fixed by the Board. RCW 9.95.110.

Allowance of good time credits is governed by RCW 9.95.070, which provides:

> Every prisoner who has a favorable record of conduct at the penitentiary or the reformatory, and who performs in a faithful, diligent, industrious, orderly and peaceable manner the work, duties, and tasks assigned to him to the satisfaction of the superintendent of the penitentiary or reformatory, *and in whose behalf the superintendent of the penitentiary or reformatory files a report certifying that his conduct and work have been meritorious and recommending allowance of time credits to him,* shall upon, but not until, the adoption of such recommendation by the board of prison terms and paroles, be allowed time credit reductions from the term of imprisonment fixed by the board of prison terms and paroles.

(Italics ours.)

Thus, the earning of good time credits is contingent upon three things. First, the prisoner must maintain a favorable conduct and work record. Second, the prison superintendent must recommend that the good time credits be allowed. As the State correctly points out, pursuant to RCW 9.95-.070 the Board cannot grant good time credits absent the superintendent's recommendation. Third, the Board must adopt the superintendent's recommendation. This suggests that the Board would have discretion to deny good time credits despite a superintendent's recommendation that good time be granted. *See State ex rel. Linden v. Bunge,* 192 Wash. 245, 73 P.2d 516 (1937). However, the State asserts that the Board automatically grants good time credits whenever the superintendent recommends them. This assertion is supported by the affidavit of T. G. Pappas, supervisor of records and case management for the Board, who states that it is the Board's policy to automatically adopt good time certified by a prison superintendent.

The superintendent's recommendation will be based

upon the prisoner's conduct and work record at the prison. A standardized system for determining whether a prisoner has misbehaved is codified at WAC 275–88. The prison hearing committee has jurisdiction over all serious infractions. WAC 275–88–070. The prisoner may attend the hearing before the hearing committee, and is permitted to call witnesses, present documentary evidence, and question witnesses against him. WAC 275–88–090. The committee's decision must be in writing and include the reasons for reaching the decision. WAC 275–88–093. The committee may choose from a wide variety of sanctions for a serious infraction, including a recommendation to the prison superintendent that he not certify good time credits to the Board pursuant to RCW 9.95.070. WAC 275–88–105(2)(l).

In sum, a prisoner is given the opportunity to reduce his minimum sentence by one–third through earning good time credits. Pursuant to RCW 9.95.070, a prisoner can earn good time credits by maintaining a favorable conduct and work record. A prisoner who commits a serious infraction will be given a hearing before the prison hearing committee, which can recommend that the superintendent not certify good time credits to the Board. The Board, in turn, will automatically grant or deny good time credits in reliance upon the superintendent's recommendation.

Turning back to RCW 9.95.080, we note that it gives the Board original, though not exclusive, jurisdiction to review all infractions of rules and regulations of the state's penal institutions. *Dawson v. Hearing Comm.*, 92 Wn.2d 391, 399, 597 P.2d 1353 (1979). Where an infraction has occurred, the statute gives the Board the authority to revoke any order which it previously made determining how long a prisoner must be incarcerated. This includes not only revocation of the minimum sentence previously set pursuant to RCW 9.95.040, but also "the forfeiture of all or a portion of credits earned or to be earned, pursuant to the provisions of RCW 9.95.110 . . .". RCW 9.95.080. Since good time credits are earned pursuant to RCW 9.95.070, the forfeiture of credits "earned or to be earned, pursuant to the provisions

of RCW 9.95.110," must refer to the loss of credits *already* earned pursuant to RCW 9.95.070, or which could have been earned *in the future,* up to the one–third limit imposed by RCW 9.95.110. *See Arment v. Henry,* 98 Wn.2d 775, 784, 658 P.2d 663 (1983) (Dore, J., dissenting). (RCW 9.95.070 allows the Board to certify past good time, and is far different from RCW 9.95.080, which permits the Board to take away future good time.) However, before this harsh penalty may be exacted, the statute requires a hearing before the Board, at which the prisoner shall be present and entitled to be heard, and may present evidence and witnesses on his behalf. RCW 9.95.080.

In this case, the Board merely adopted prison superintendent recommendations that petitioners be denied good time credits, acting pursuant to RCW 9.95.070. The Board did not assume original jurisdiction to determine whether petitioners had violated prison rules, nor did it revoke any good time credits which petitioners had already earned, or could have earned in the future. Therefore, RCW 9.95.080 does not apply, and petitioners are not entitled to in–person hearings before the Board under that statute.

Petitioners next argue that the due process clause entitled them to a hearing before the Board at the time it adopted the superintendents' recommendations to deny them good time credits. We do not agree.

The due process clause provides that no state shall deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. 14. We recognize that, where a state creates a right to earn good time credits, a prisoner has a Fourteenth Amendment "liberty" interest in those credits which prevents their deprivation absent observation of minimal due process requirements. *Wolff v. McDonnell,* 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974). In this case, however, we believe petitioners have been afforded all process due them. The Board *automatically* denied petitioners good time credits in accordance with prison superintendent recommendations. These recommendations were made only after the petitioners had

been given hearings before prison disciplinary committees and convicted of disciplinary violations. Petitioners have not challenged these convictions, on due process grounds or otherwise. Since the Board's action was preordained by the outcome of the underlying disciplinary hearings, and since petitioners were afforded due process at those hearings, requiring the Board to hold a second hearing at which petitioners would be entitled to appear would serve no purpose.[1]

Counsel for the Institutional Legal Services Project, appointed to serve as amicus curiae in this case, attempts to buttress petitioners' due process argument with *Monohan v. Burdman,* 84 Wn.2d 922, 530 P.2d 334 (1975). *Monohan* held that once a tentative parole release date has been established, the prospective parolee is deserving of minimal due process safeguards before cancellation of that date for reasons other than failure to develop an adequate rehabilitation plan. *Monohan,* at 929. Amicus argues that the effect of denying petitioners good time credits was to "cancel" their tentative parole release dates; thus, he concludes, the petitioners were entitled to a due process hearing before the Board. We are not persuaded. Even if the denial of good time credits could be characterized as a "revocation" of a tentative parole release date, we have already concluded that petitioners were afforded adequate due process protection at the time they were tried for their disciplinary violations.

Amicus also contends that the Board has denied petitioners equal protection by not giving them the opportunity to attend progress meetings called by the Board, an opportunity allegedly enjoyed by prisoners housed in Washing-

---

[1] It appears that the Board has the discretion pursuant to RCW 9.95.070 to refuse to adopt a superintendent's recommendation that a prisoner receive good time credits. *See State ex rel. Linden v. Bunge, supra.* We do not decide at this time what, if any, minimal due process requirements the Board would have to observe if it were to exercise this apparent discretion. However, the State has conceded that the Board could not refuse to adopt such a recommendation without first providing the affected prisoner a hearing.

ton. We reject this equal protection challenge for two reasons. To begin with, even prisoners housed in Washington have no right to attend progress meetings, though they often may do so. Progress meetings are held at the Board's discretion. Board rule 3.050. Moreover, the thrust of amicus' argument is that the opportunity to appear personally must be granted because the Board will determine at the progress meeting whether good time credits should be granted or denied. Since the Board does not itself determine whether good time should be granted or denied, but rather adopts the recommendation of the prison superintendent, amicus' equal protection challenge is based upon a faulty premise and must fail.

Finally, amicus asserts that petitioner Piercy has been denied equal protection because he has no opportunity while incarcerated at Marion to participate in educational and vocational programs, and therefore cannot further reduce his prison time through work and program participation. This contention, raised for the first time in amicus' supplemental brief, is entirely unrelated to the issue which was certified to this court. During oral argument, we were informed that Piercy has filed another personal restraint petition with the Court of Appeals in which he raises this new issue. Therefore, we will not address it now.

The consolidated personal restraint petitions are hereby dismissed with prejudice.