Robert **BERGEN**, Plaintiff–Appellant,

v.

James **SPAULDING**, Superintendent, et al., Defendants–Appellees.

No. 87–4133.

United States Court of Appeals,
Ninth Circuit.

Submitted June 7, 1989 *.

Decided Aug. 3, 1989.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Robert Bergen, Everett, Wash., pro per.

James B. Hansen, Asst. Atty. Gen., Olympia, Wash., for defendants-appellees.

Before SCHROEDER, BEEZER and BRUNETTI, Circuit Judges.

SCHROEDER, Circuit Judge:

Plaintiff-appellant Robert Bergen is a former Washington State prisoner who appeals the district court's grant of summary judgment dismissing his 42 U.S.C. § 1983 action against Washington prison authorities. The claim arises out of the defendants' failure to release Bergen until more than twenty days after the good behavior early release date that prison officials had approved. The district court dismissed the action on the ground that the plaintiff had no constitutionally protected liberty interest in being released on his good time release date. Because the plaintiff was denied without a hearing the benefit of good behavior time credits to which he had be-

come entitled, we reverse on the authority of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The facts are not in dispute. Plaintiff Bergen was serving a ten-year sentence for Assault and Indecent Liberties. Under Washington statutes, prisoners may receive up to a one-third reduction in the length of their sentence for good behavior. Wash.Rev.Code §§ 9.95.070, 9.95.110 (1988). Such reduction comes in the form of "good time release credits," and these credits are subtracted from the prisoner's original release date to obtain a new "good time release date" (GTRD). Bergen accumulated sufficient good time release credit to bring his GTRD up to February 18, 1981.

About five months before his scheduled good time release, Bergen was brought before prison disciplinary authorities on an infraction charge. He was found not guilty of any infraction, but the prison administration made no entry in his file to show the proper disposition. This erroneously pushed his release date back. In response to his inquiry, a prison official wrote to him on January 15, 1981, confirming that errors had occurred in calculating his GTRD, and reaffirming his correct GTRD of February 18, 1981. The record before us reflects that the prison official that same day sent a letter to the Board of Prison Terms and Paroles requesting that Bergen be released on his February 18 GTRD. On January 22, the Board requested a corrected good time certification from the prison.

The superintendent's office issued a formal recommendation to the Board dated January 23, recommending that Bergen be released on his February 18 GTRD. The Board issued a preliminary administrative decision dated February 6, which "authorized parole to a Board approved plan on GTRD with Psych Report," but indicated that no action would be taken yet on the prison's recommendation because the Board had not yet received the requested documentation. The psychiatric report and corrected good time certification were sent by the prison and received by the Board on February 13. By the time of Bergen's

GTRD, February 18, the Board was in possession of all necessary documentation and "an acceptable plan of parole" as required by Washington law. *In Re Ayers*, 105 Wash.2d 161, 713 P.2d 88, 91 (1986) (en banc). However, the Board made no formal decision until March 6. Bergen was not released on parole until March 13, twenty-three days after his GTRD. Bergen claims that the defendants' wrongful acts, including the prison officials' refusal to correct Bergen's records and the Board's refusal to perform its duty, led to his late release. The defendants present no justification for Bergen's late release.

■ A prisoner has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979) (no right to full, formal parole board hearing before release); *Ayers*, 713 P.2d at 89–91 (relying on *Greenholtz*). However, state early release statutes can create a liberty interest protected by due process guarantees. *Greenholtz*, 442 U.S. at 12, 99 S.Ct. at 2106. Whether a state statute provides such a protectable entitlement depends on the structure and language of the statute, as well as the state courts' interpretation of the scope of the interest. *Id.*

■ A board charged with deciding a prisoner's early release may be delegated significant discretion in making its decision, and yet be constrained by legal standards in exercising that discretion. *Board of Pardons v. Allen*, 482 U.S. 369, 375–76, 107 S.Ct. 2415, 2419–20, 96 L.Ed.2d 303 (1987). If a statutory scheme requires the board to release a prisoner once the board determines that certain necessary prerequisites exist, that scheme may give rise to a liberty interest in early release. *Id.* at 376, 107 S.Ct. at 2419–20. Significant to the determination of whether parole or other early release statutes create such a protectable liberty interest is their use of mandatory language, including use of the commanding term "shall." *Id.* at 377–81, 107 S.Ct. at 2420–22 (liberty interest created by statute granting mandatory early release

subject only to certain prerequisite conditions).

■ The Supreme Court has held that prisoners have a liberty interest in good behavior time credits, provided they have earned the credits under applicable state statutes and procedures. *Wolff*, 418 U.S. at 556–57, 94 S.Ct. at 2974–75. Once the credits are earned, they cannot be denied without benefit of minimal due process protections. *Id.* at 557. We have found a liberty interest created by a good time credit statute that used mandatory language. *McFarland v. Cassady*, 779 F.2d 1426, 1428–29 (9th Cir.1986). In the present case, if Bergen's good time credits were earned as of February 18, 1981, and they entitled him to release as of that date, then his due process rights were violated when he was retained in prison beyond that date without a hearing and a showing of some cause for his continued imprisonment.

■ The issue in this case therefore becomes whether or not Bergen earned an entitlement to release on the good time release date under applicable Washington statutes and procedures. The Washington statute, like the Montana statute in *Allen*, uses mandatory language, commanding that

> [e]very prisoner who has a favorable record of conduct at the penitentiary ..., and in whose behalf the superintendent ... files a report certifying that his conduct and work have been meritorious and recommending allowance of time credits to him, *shall* upon, but not until, the adoption of such recommendation by the board of prison terms and paroles, be allowed time credit reductions from the term of imprisonment....

Wash.Rev.Code § 9.95.070 (emphasis added). Such mandatory language supports the plaintiff's position.

In deciding that Bergen had not earned any such entitlement, the district court relied upon Wash.Rev.Code § 9.95.100 (1988), which provides that "[t]he Board shall not, however, until his maximum term expires, release a prisoner, unless in its opinion his rehabilitation has been complete and he is a

fit subject for release." Similar language appears in a phrase of Wash.Rev.Code § 9.95.070 quoted above, providing that a prisoner may not be granted the credits until the Board adopts the superintendent's recommendation. The defendants argue that under these statutes a prisoner has no liberty interest in good time credits because he has no entitlement to release until the Board formally announces that he may be released. The defendants ask us to hold that under Washington law the Board has absolute discretion with respect to release of prisoners, regardless of good time credits approved by the superintendent.

The Washington Supreme Court has examined the operation of the good time credit system in Washington. *See In Re Piercy*, 101 Wash.2d 490, 681 P.2d 223, 226 (1984). The analysis in *Piercy* demonstrates that the Board does not exercise the broad discretion necessary to sustain the defendants' position. In *Piercy* the court had to decide whether prisoners were entitled to a hearing by the Board prior to the Board's adoption of the superintendent's recommendation denying good time credits. The court held that the prisoners were not entitled to a hearing before the Board, explaining that such a hearing was unnecessary because the superintendent's recommendations of denial were based upon infractions for which the prisoners had already obtained a hearing. A second hearing before the Board was unnecessary because "[t]he Board *automatically* denied petitioners good time credits in accordance with prison superintendent recommendations.... [T]he Board's action was preordained by the outcome of the underlying disciplinary hearings." *Id.* (emphasis in original).

In this case, the underlying disciplinary hearing led to the restoration, not the denial, of good time credits. The *Piercy* court recognized that a further hearing would be required before the Board could exercise discretion to deny recommended credits, observing that "the State has conceded that the Board could not refuse to adopt such a recommendation [approving credits] without first providing the affected prisoner a hearing." *Id.* 681 P.2d at 226 n. 1. The Washington Supreme Court provides defin-

itive interpretation of Washington state law that binds us. *See Wainwright v. Goode*, 464 U.S. 78, 84, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983) (per curiam). Under its interpretation, the recommendation of the superintendent, and not the exercise of discretion by the Board, determines a prisoner's entitlement to good time credits. Because of this, the superintendent's recommendation "preordained" Bergen's early release. The Board did not have discretion to decide without a hearing that Bergen should remain in prison beyond his February 18 GTRD.

In finding due process satisfied, the Washington Supreme Court in *Piercy* relied on the grant of at least one hearing before the benefits of earned good time credits could be denied a prisoner. By contrast, appellant Bergen in this case did not receive any hearing at all before being denied the full benefit of earned credits that the superintendent had recommended. Accordingly, Bergen has set forth a claim for violation of due process rights created by the Washington statutory good behavior time credit system.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings.