# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSEPH CARVER,

        *Plaintiff-Appellant,*

v.

JOSEPH LEHMAN; KIMBERLY ACKER;
VICTORIA ROBERTS; SIX TO BE
NAMED DEFENDANTS,

        *Defendants-Appellees.*

No. 06-35176

D.C. No.
CV-04-05570-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued April 17, 2007
Submitted April 28, 2008
San Francisco, California

Filed June 9, 2008

Before: Warren J. Ferguson, Stephen Reinhardt, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Reinhardt;
Concurrence by Judge Milan D. Smith, Jr.

6509

**COUNSEL**

Tyler A. Baker, Esq., Todd Gregorian, Esq., Heather N. Mewes, Esq. (argued), Fenwick & West, LLP, Mountain View, California, for the plaintiff-appellant.

Rob McKenna, Esq., Sara J. Olson, Esq. (argued), Gregory J. Rosen, Esq., Office of the Washington Attorney General, Criminal Justice Division, Olympia, Washington, for the defendants-appellees.

## OPINION

REINHARDT, Circuit Judge:

This case presents the question whether Washington state law creates a liberty interest in an inmate's early release into community custody that is protected under the Due Process Clause of the Fourteenth Amendment. We hold that it does. We conclude, however, that this right was not clearly established at the time of the facts giving rise to this case. We therefore affirm the district court's grant of qualified immunity.

## I.   Factual and Procedural Background

In August 1999, Joseph Dale Carver pled guilty to child molestation in the third degree. He was sentenced to fifty-four months of confinement in the custody of the Washington State Department of Corrections ("DOC" or "Department"). Because he was a sex offender, state law also required that Carver be sentenced to a term of community custody to begin "either upon completion of the term of confinement or at such time as [he] is transferred to community custody in lieu of earned release[.]" *See* WASH. REV. CODE § 9.94A.710(1) (2006).[1] He was sentenced to a thirty-six-month period of community custody.

---

[1]The Washington Court of Appeals has explained that "[c]ommunity custody is the intense monitoring of an offender in the community for a period of at least one year after release or transfer from confinement. Although it has other purposes, community custody continues in the nature of punishment, and is not equivalent to general release." *In re Crowder*, 985 P.2d 944, 945 (Wash. Ct. App. 1999). Offenders in community custody live in a residence pre-approved by the DOC and are subject to mandatory and discretionary conditions imposed by either the DOC or the sentencing court. *See, e.g.*, WASH. REV. CODE §§ 9.94A.710(2)-(3), 9.94A.700(4)-(5) (listing mandatory and discretionary conditions imposed on offenders subject to community custody including, *inter alia*, reporting requirements, payment of supervision fees, and prohibitions against possession of controlled substances and consumption of alcohol).

Carver's good behavior as a prisoner earned him an early release date of June 27, 2002.[2] Carver's sex offense, however, precluded him from being released on his earned date. WASH. REV. CODE § 9.94A.728(2)(a) (2006). Rather, state law provides that sex offenders may become eligible for transfer to community custody in lieu of early release. *Id*. Eligibility for transfer to community custody is determined based on "release plan[s]" submitted by offenders. WASH. REV. CODE § 9.94A.728(2)(c). In March 2002, Carver submitted a release plan. His plan was denied in April 2002, pursuant to a DOC policy then in effect which provided for the categorical denial of release plans of offenders, like Carver, whom the Department determined "appear[ed] to meet the definition of a sexually violent predator and [who had] been referred for Civil Commitment . . . ." DOC Policy Directive 350.200 (May 4, 2001).[3] As a result of the denial of his proposed release plan, Carver served his full term of confinement.

In September 2004, Carver filed a civil rights suit under 42 U.S.C. § 1983, asserting that DOC officials denied him early release into community custody without affording him due process of law under the Fourteenth Amendment.[4] The district court, adopting the report and recommendation of the magistrate judge, granted the DOC officials' motion for summary judgment on two principal grounds: one, that Washington law does not create a liberty interest in early release into community custody and therefore Carver did not have a due process

---

[2]For reasons that are not explained in the record before us, this date was subsequently pushed back to January 13, 2003.

[3]As we explain *infra*, this policy was subsequently struck down by the Washington Court of Appeals in *In re Dutcher*, 60 P.3d 635, 640 (Wash. Ct. App. 2002) (holding "DOC Policy 350.200 . . . violates the governing statutes").

[4]Carver's original complaint named as a defendant only Joseph Lehman, secretary of the DOC at the time that Carver's release plan was denied. In his amended complaint, Carver named two additional defendants, Kimberley Acker and Victoria Roberts, both DOC officials involved in making end of sentence review determinations.

right protected by the Fourteenth Amendment and two, that even if such a right existed, Defendant Lehman was entitled to qualified immunity.[5] Carver timely appealed. We have jurisdiction to review the district court's determination pursuant to 28 U.S.C. § 1291, and we review *de novo* its grant of summary judgment and finding of qualified immunity. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).

## II.   Discussion

**[1]** The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1. Our analysis of due process claims proceeds in two steps. "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted).

**[2]** We have recognized that "[a] liberty interest may arise from either of two sources: the due process clause itself or state law." *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir. 1986). Carver concedes that the Due Process Clause does not create a liberty interest in an inmate's "conditional[ ] release[ ] before the expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Rather, he argues that Washington state's statutory scheme governing early release into commu-

---

[5]The district court also adopted the magistrate judge's finding that Defendants Acker and Roberts were entitled to summary judgment because Carver failed to show that "these defendants played any part in enacting the policy that precluded [Carver] from being considered for release." Carver does not appeal this portion of the judgment below.

nity custody "uses mandatory language, 'creat[ing] a presumption that . . . release will be granted' . . . unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz*, 442 U.S. at 12; citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 377-78 (1987)). As in prior cases, our task here is to apply the well-established mandatory language rule governing state-created liberty interests set forth by the Supreme Court in *Greenholtz* and *Allen* to the Washington statutory scheme at issue.[6] *See, e.g.*, *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006) (holding California law creates a liberty interest in parole); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (same); *McQuillion*, 306 F.3d at 901-902 (same); *Bermudez v. Duenas*, 936 F.2d 1064, 1065-66 (9th Cir. 1991) (holding Guam law creates a liberty interest in parole); *Baumann v. Ariz. Dep't of Corr.*, 754 F.2d 841, 843-45 (9th Cir. 1989) (holding Arizona law does not create a liberty interest in custodial release); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d

---

[6]In his reply brief, Lehman argued that *Sandin v. Connor*, 515 U.S. 472 (1995) should control our liberty interest inquiry. In *Sandin*, the Supreme Court considered a challenge to a prison regulation imposing disciplinary segregation for misconduct. *Id*. at 475-77. In holding that the regulation did not create a liberty interest, the Court did not apply the "mandatory language" framework of *Greenholtz* and *Allen*. *Id*. at 481-86. Instead, it focused on whether the challenged restraint arising from the regulation "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id. See also Wilkinson v. Austin*, 545 U.S. 209, 222-224 (2005) (applying *Sandin* to determine whether Ohio inmates have a liberty interest in avoiding placement in a "supermax" prison). As Lehman properly conceded in his supplemental submissions to the court, we have since held that *Sandin*'s holding was limited to "the separate but related question of when due process liberty interests are created by *internal prison regulations*." *McQuillion*, 306 F.3d at 902-03 (emphasis added). *See also Sass*, 461 F.3d at 1127 n.3 (explaining that this court has "consistently rejected th[e] argument" that *Sandin* eliminated the " 'mandatory language' approach of *Greenholtz* and *Allen*). Accordingly, we continue to apply the "mandatory language" rule set forth in *Greenholtz* and *Allen* in order to determine whether Washington's statutory scheme creates a liberty interest in early release into community custody.

461, 469-70 (9th Cir. 1989) (holding Idaho law does not create a liberty interest in parole). We turn to that task now.

## A.   The Washington statutory scheme governing early release into community custody creates a constitutionally protected liberty interest.

Washington law mandates that an individual convicted of a sex offense be sentenced to a term of community custody that "shall begin either upon completion of the term of confinement or at such time as the offender is transferred to community custody in lieu of earned release." WASH. REV. CODE § 9.94A.710(1). Unlike other inmates, then, a convicted sex offender who accrues "earned release time . . . for good behavior and good performance" is not entitled to early release; rather, he is eligible for transfer into community custody at an earlier date. WASH. REV. CODE § 9.94A.728(1), (2)(a). The law requires the DOC to develop a program to effectuate the transfer to community custody of such inmates. *See* WASH. REV. CODE § 9.94A.728(1). As part of that program, the Department must "require the offender to propose a release plan that includes an approved residence and living arrangement." WASH. REV. CODE § 9.94A.728(2)(c). The law then describes how the DOC should evaluate such release plans, stating:

> The department *may deny* transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section *if* the department determines an offender's release plan, including proposed residence location and living arrangements, [1] may violate the conditions of the sentence or conditions of supervision, [2] place the offender at risk to violate the conditions of the sentence, [3] place the offender at risk to reoffend, or [4] present a risk to victim safety or community safety.

Wash. Rev. Code § 9.94A.728(2)(d) (emphasis added).[7]

In order to comply with the statutory mandate, the DOC promulgated Policy Directive 350.200. Under the version of this policy in force when Carver submitted his release plan, the DOC instructed that release plans of sex offenders be assessed to determine "the degree of risk for victims and potential victims of similar age or circumstances" and to ensure that, subject to certain exceptions, "[s]ex offenders will not return to a residence where minor victim(s) or other children of similar age are present in the residence[.]" DOC Policy Directive 350.200 (May 4, 2001). The Policy Directive specified that a residence proposed by an offender within a release plan may be denied if the proposed location will place the offender in violation of court-imposed conditions, at the likely risk to re-offend, or in close proximity to the minor victim(s), school, child care center, playground, or other facilities where children of similar age and circumstances surrounding the conviction are present and who may be put at substantial risk of harm by the offender residing at that location.[8] The

---

[7]The provision goes on to state that "[t]he department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement." Wash. Rev. Code § 9.94A.728(2)(d). The concurrence argues that this sentence makes it clear that the function of section 9.94A.728(2)(d) is "to preserve to the DOC the discretion to deny transfer in the event that it makes one of the four determinations, notwithstanding what other legal sources might otherwise require." Conc. Op. at 6532. We do not disagree. The fact that the provision permits the DOC to deny release even where other legal sources would allow for it is irrelevant, however, to the question at hand: whether, regardless of other legal sources, the statute itself places substantive limits on the DOC's exercise of discretion? As we explain *infra*, the provision's preservation to the DOC of discretion to deny transfer only "in the event that it makes one of the four determinations[,]" is precisely the type of substantive limitation that gives rise to the liberty interest that we now recognize.

[8]The final of these criteria is drawn from section 72.09.340(3)(a) of Washington's Revised Code which provides that the DOC is "authorized to reject a residence location if the proposed residence is within close

DOC's policy also provided for the categorical denial of release plans "if the End of Sentence Review Committee has determined that the offender appears to meet the definition of a sexually violent predator and s/he has been referred for Civil Commitment . . . ."[9] This final provision, under which Carver's release plan was denied, was subsequently eliminated after the Washington Court of Appeals held that it violated the statutory requirement that all sex offenders "may become eligible" for community custody. *See In re Dutcher*, 60 P.3d at 638-40. *See also* Letter from Anne L. Fiala, Assistant Deputy Secretary, Washington State Dep't of Corrections, to Office of Correctional Operations Management (Jan. 12, 2003).[10]

**[3]** Carver argues that this statutory scheme creates a protected liberty interest because it requires the DOC to transfer

---

proximity to schools, child care centers, playgrounds, or other grounds or facilities where children of similar age or circumstance as a previous victim are present who the department determines may be put at substantial risk of harm by the sex offender's residence at that location." WASH. REV. CODE § 72.09.340(3)(a) (2006).

[9]Washington state law defines "sexually violent predator" as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." WASH. REV. CODE § 71.09.020(16) (2006). An offender determined to be a sexually violent predator may be subject to civil commitment after his term of confinement. WASH. REV. CODE § 71.09.040 (2006).

[10]The DOC amended Policy Directive 350.200 in June 2002. In its amended form, the policy provides for the denial of release plans "[w]hen the offender's plan is to return to a residence where there is a victim(s) that the [department] believes is at risk[,]" and for the rejection of proposed residences under the same criteria as set forth in its prior directive. *See* DOC Policy Directive 350.200 (June 25, 2002). The amended policy also initially retained the provision requiring the categorical denial of the release plans of those who appear to meet the sexually violent predator definition and have been referred for civil commitment. *Id.* As we explain *supra*, the categorical denial provision was eliminated after the Washington Court of Appeals' decision in *In re Dutcher*, 60 P.3d at 640.

an inmate to community custody in lieu of earned release "unless any one of the . . . specifically designated reasons are found[,]" thereby "creat[ing] a presumption that . . . release [into community custody] will be granted, and that this in turn creates a legitimate expectation of release absent the requisite finding that one of the justifications for [denial] exists." *Greenholtz*, 442 U.S. at 11-12. *See also Allen*, 482 U.S. at 377-78. We agree.

**[4]** The Washington statutory scheme uses language that effectively mandates the transfer to community custody of those inmates who have earned release time and who have not been found to meet one of the statutory reasons for denial of a release plan set forth in § 9.94A.728(2)(d). Section 9.94A.710(1) requires that sex offenders be sentenced to a term of community custody to begin either when the offender's term of confinement is complete or when he is transferred as a result of earned release time. Section 9.94A.728(1) likewise requires the DOC to develop and promulgate procedures by which a sex offender may become eligible for transfer to community custody in lieu of earned release time. The same section then sets forth the limited circumstances under which the Department "may deny" an inmate's proposed plan for transfer to community custody. WASH. REV. CODE § 9.94A.728(2)(d) (listing as legitimate reasons for denial, a DOC determination that the release plan may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim or community safety). By placing substantive limitations on DOC's discretion to deny release plans and, in particular, by requiring that denial of such plans be based on the limited criteria contained in section 9.94A.728(2)(d), Washington has created a liberty interest in early release into community custody that is protected by the Due Process Clause of the Fourteenth Amendment.[11] *See Allen*, 482 U.S. at 375-76 (clarifying

---

[11]At oral argument, Lehman argued that the presence of more specific criteria for denial of proposed residence locations in section

that a state may grant "significant discretion to the decision-maker" to apply "general or broad release criteria" without "depriv[ing] the prisoner of the liberty interest in parole[,]" so long as "release is *required* after the [decisionmaker] determines (in its broad discretion) that the necessary prerequisites exist"). *See also Baumann*, 754 F.2d at 844 (noting that "[a] state may create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitations on the exercise of official discretion"); *Bergen v.*

---

72.09.340(3)(a) undermines Carver's contention that the four criteria listed in section 9.94A.728(2)(d) provide the exclusive legitimate bases for denial of a release plan. Lehman is incorrect: the bases for denial of proposed residence locations contained in section 72.09.340(3)(a) are, in effect, specific variations of the same more general formulations set forth for denial of release plans in section 9.94A.728(2)(d). Section 72.09.340(3)(a) provides:

> [T]he department shall not approve a residence location if the proposed residence: (i) Includes a minor victim or child of similar age or circumstance as a previous victim who the department determines may be put at substantial risk of harm by the offender's residence in the household; or (ii) is within close proximity of the current residence of a minor victim, unless the whereabouts of the minor victim cannot be determined or unless such a restriction would impede family reunification efforts ordered by the court or directed by the department of social and health services. The department is further authorized to reject a residence location if the proposed residence is within close proximity to schools, child care centers, playgrounds, or other grounds or facilities where children of similar age or circumstance as a previous victim are present who the department determines may be put at substantial risk of harm by the sex offender's residence at that location.

These bases for denial of a proposed residence, which take into account whether the residence includes or is near a past or potential victim, are simply more specific examples of the final two criteria that serve as legitimate bases for denial under § 9.94A.728(2)(d), whether the "proposed residence location and living arrangements . . . place the offender at risk to reoffend, or present a risk to victim safety or community safety." WASH. REV. CODE § 72.09.340(3)(a).

*Spaulding*, 881 F.2d 719, 721 (9th Cir. 1989) ("A board charged with deciding a prisoner's early release may be delegated significant discretion in making its decision, and yet be constrained by legal standards in exercising that discretion . . . . that scheme may give rise to a liberty interest in early release.") (internal citation omitted).

**[5]** That the Washington statute governing transfer to community custody does not use the more traditional mandatory language formula used in other early release statutes, i.e. stating that the DOC "shall" grant release "unless" certain findings are made, does not require a contrary result. *See Allen*, 482 U.S. at 378 (rejecting the argument that a statute must contain the "shall/unless" formula in order to create a liberty interest). Although we have accorded significance to the use of the term "shall" in assessing whether early release statutes create a liberty interest, we have never held that use of this term is required in order to satisfy the mandatory language rule set forth in *Greenholtz* and *Allen*. Nor do we here. Despite the absence of the word "shall," we conclude that the language of section 9.94A.728(2)(d) is mandatory. Section 9.94A.728(2)(d) provides that the department "*may deny* transfer to community custody . . . *if*" any one of four criteria is met. By establishing criteria under which release may be denied, section 9.94A.728(2)(d) creates the presumption that, absent the existence of one those criteria, release will be granted. The repetition of the criteria, albeit in more specific form, in section 72.09.340(3)(a) and in Policy Directive 350.200 confirms our understanding of the mandatory nature of the statute.

The "may deny . . . if" formula operates in precisely the same manner and has precisely the same effect as a "shall grant . . . unless" clause. Under the "may deny . . . if" formula, the provision sets forth the conditions under which the agency may deny release. Otherwise, it must grant it. This is distinguishable from state statutes that provide that a decision-maker "may grant . . . if" certain criteria are met. Under the

"may grant . . . if" formula, the agency may only grant release if the relevant criteria are met, but it is not required to do so.[12] Therefore, under the "may deny . . . if" formula, as under a "shall grant . . . unless" clause, there is an expectation that release will be granted unless one of the specified conditions exists.

Our conclusion is supported by Washington state court decisions finding a limited liberty interest in transfer to community custody in lieu of early release, as well as interpreting the statutory provisions governing such transfers. The Washington Court of Appeals has consistently found a "limited liberty interest in early release into a community custody program . . . ." *In re Crowder*, 985 P.2d at 944-45 (holding inmate had liberty interest in grant or denial of community custody placement upon earning of early release, but that the minimum level of due process required to protect this interest was provided). *See also In re Dutcher*, 60 P.3d at 636 ("An inmate's interest in his earned early release credits is a limited, but protected, liberty interest."); *In re Liptrap*, 111 P.3d 1227, 1231 (Wash. Ct. App. 2005) (same).[13]

---

[12]For this reason, courts have routinely held that the "may grant . . . if" formulation does not create a liberty interest. *See, e.g.*, *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) (New York parole statute); *Dace v. Mickelson*, 797 F.2d 574, 577 (8th Cir. 1986) (South Dakota parole statute); *Gale v. Moore*, 763 F.2d 341, 343 (8th Cir. 1985) (Missouri parole statute); *Parker v. Corrothers*, 750 F.2d 653, 656-657 (8th Cir. 1984) (Arkansas parole statute); *Dock v. Latimer*, 729 F.2d 1287, 1288 (10th Cir. 1984) (Utah parole statute); *Irving v. Thigpen*, 732 F.2d 1215, 1217 (5th Cir. 1984) (Mississippi parole statute); *Candelaria v. Griffin*, 641 F.2d 868, 869-70 (10th Cir. 1981) (New Mexico parole statute); *Williams v. Briscoe*, 641 F.2d 274, 276-77 (5th Cir. 1981) (Texas parole statute); *Schuemann v. Colo. State Bd. of Adult Parole*, 624 F.2d 172, 174 n.2 (10th Cir. 1980); *Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir. 1979) (New York parole statute); *Shirley v. Chestnut*, 603 F.2d 805, 806-07 (10th Cir. 1979) (Oklahoma parole statute); *Wagner v. Gilligan*, 609 F.2d 866, 867 (6th Cir. 1979) (Ohio parole statute).

[13]The concurrence contends that we read too much into the use of the word "liberty interest" in these cases. It first argues that the liberty interest

Moreover, in interpreting the statutory scheme governing early release into community custody, the state Court of Appeals has on two occasions discussed the mandatory nature of the law. In *Dutcher*, an inmate similarly situated to Carver challenged the DOC's failure to review his plan for release into community custody pursuant to the Department's policy of categorically denying the plans of those offenders who appeared to be sexually violent predators and who were referred for civil commitment. 60 P.3d at 635-36. The court held that the DOC's policy violated the statutory mandate, explaining that "the statute *compels* DOC to require offenders to develop a release plan, and *requires* DOC to base its com-

recognized by the Washington Court of Appeals is merely procedural, rather than substantive, in nature. Conc. Op. at 6533 ("In both *Liptrap* and *Dutcher*, the Washington court's holding concerned only the inmate's *procedural right* to have his proposal considered on the merits, rather than a substantive *right to transfer*."). To the contrary, the Washington court explained: "An inmate's interest in his earned early release credits is a limited, but protected, liberty interest. *Likewise*, the department's compliance with requirements of statutes affecting his release is a protected liberty interest." *See In re Liptrap*, 111 P.3d at 1231 (quoting *In re Ducther*, 60 P.3d at 636) (emphasis added). As this language makes clear, the Washington court recognizes a liberty interest in both the substantive right to earned early release (here, in the form of transfer to community custody) and the distinct procedural right to have the DOC comply with the requirements of the statutes governing such release.

The concurrence next suggests that "the Washington Court of Appeals is using 'liberty interest' far more broadly than the term of art of federal Due Process jurisprudence . . . encompassing any right cognizable at law with some bearing on whether one receives liberty." Conc. Op. at 6534 n.3. That the Washington court had the federal Due Process Clause—and not an ambiguous right otherwise recognized at law—in mind when analyzing section 9.94A.728(2) is, again, evidenced by the plain language of its decision in *Liptrap*, where the court framed its discussion of the interest at stake in the familiar terms of federal due process jurisprudence. *See In re Liptrap*, 111 P.3d at 1231 (explaining that " "[d]ue process protects against the deprivation of life, liberty, or property" and finding that " "[a]n inmate's interest in his earned early release credits is a limited, but protected, liberty interest").

munity custody eligibility decisions *on the merits of the release plan*." 60 P.3d at 638 (emphasis added).

Our conclusion that requiring a decision on the merits of a release plan permits the Department to deny such a plan only if it finds one of the statutory criteria listed in section 9.94A.728(2)(d) is bolstered by the state court's interpretation of the statute in *In re Liptrap*. In *Liptrap*, inmates challenged the DOC's policy of refusing to review release plans of sex offenders until a forensic psychological evaluation had been completed. *Id*. at 1229. In finding that the Department's policy violated inmates' due process rights, the court explained that "[t]he provisions in subsections [9.94A.728(2)] (c) and (d), spell[ ] out what is required in a release plan and *stat[e] reasons why the department may deny a release*[.]" *Id*. at 1232 (emphasis added). Accordingly, the *Liptrap* court found that "the department [does not have] unlimited discretion to decide whether and when to consider an offender for transfer to community custody." *Id*. Rather, the DOC's failure to "state[ ] a *legitimate reason*" for the denial of a release plan, the court concluded, "deprived [the inmates] of earned early release credits in violation of due process." *Id*. at 1234 (emphasis added).[14] This holding is consistent with our conclusion that Washington law requires that the DOC's denial of a release plan be based on a "legitimate reason," and that such reasons are enumerated in section 9.94A.728(2)(d).

**[6]** In sum, we hold that the Washington statutory scheme governing transfer to community custody of those inmates who have earned early release time creates a liberty interest that is protected under the Due Process Clause of the Four-

---

[14]The *Liptrap* court specifically noted section 72.09.340's provision for denial of a release plan because the proposed residence is near young children as a "legitimate statutory reason for disapproving a release plan for a sex offender." *In re Liptrap*, 111 P.3d at 1233 & n.6 (citing WASH. REV. CODE § 72.09.340(3)). For the reasons set forth in footnote 11 *supra*, this provision is simply a specific example of the more general bases for denial set forth in section 9.94A.728(2)(d).

teenth Amendment.[15] Our next step is to determine "whether

---

[15]We acknowledge that our holding is inconsistent with two non-precedential dispositions of this court, as well as the unpublished decisions of several federal district courts that have addressed this question. *See Dutcher v. Lehman*, No. 06-35043, 2007 WL 1742794 (9th Cir. June 14, 2007); *Chaney v. Lehman*, No. 05-36116, 2007 WL 870358 (9th Cir. Mar. 22, 2007); *Duncan v. Lehman*, No. C04-5633RBL, 2006 WL 1548820 (W.D. Wash. June 2, 2006); *Garcia v. Lehman*, No. C04-5893FDB, 2006 WL 827957 (W.D. Wash. Mar. 23, 2006). The district court dispositions are in no way binding and, for the reasons set forth above, we do not believe that they reach the correct result.

The contrary dispositions of our own court do give us pause, although when the panel involved deliberately chooses to make its views non-precedential we would be disregarding our duty to exercise our independent judgment if we treated those views as controlling on the court. *See* 9TH CIR. R. 36-3. Still we examine the less formal views of our colleagues with some deference, while bearing in mind the ultimate status our colleagues have chosen to have us and all future panels afford those views. In *Chaney*, one of the two non-precedential dispositions filed by our colleagues, Washington inmates held beyond the date that they were or would be eligible for release into community custody appealed the denial of their release without a prior hearing. 2007 WL 870358, at *1. In affirming the district court's dismissal of their section 1983 claim, the *Chaney* panel reached two alternative holdings. One, with only the cursory observation that "[t]he Washington statute grants a significant degree of discretion to the DOC[,]" the panel found that state law did not create a liberty interest in release into community custody. *Id*. However, as the Supreme Court explained in *Allen*, "the presence of general or broad release criteria—delegating *significant discretion* to the decisionmaker . . . . is not incompatible with the existence of a liberty interest." *Allen*, 482 U.S. at 375-76 (emphasis added). Two, acknowledging that Washington state courts have found a limited liberty interest, the panel concluded that even assuming the existence of such an interest, the process demanded by the *Chaney* plaintiffs—a hearing—was not required. 2007 WL 870358, at *2. In the present case, Carver argues only that he was entitled to some form of process before his release plan was summarily rejected, not that he was entitled to a full hearing. Thus, the alternative *Chaney* holding is in no way inconsistent with the conclusion we reach here. In *Dutcher*, the second of the two non-precedential dispositions, the panel's conclusion that Washington law does not create a liberty interest in early release into community placement was supported only by a citation to *Greenholtz*. *Dutcher*, 2007 WL 1742794, at *1. For the reasons set forth above, we believe that *Greenholtz* supports the existence of a liberty interest. The *Dutcher* panel's failure to provide any reasoning in its disposition makes it impossible for us to address the merits of its conclusion to the contrary.

the procedures attendant upon th[e] deprivation [of Carver's liberty interest] were constitutionally sufficient[.]" *Thompson*, 490 U.S. at 460. Carver's release plan was denied under a categorical policy that provided him with no process at all; it simply rejected all plans of offenders who, like Carver, appeared to fall under the definition of a sexually violent predator and who were referred for civil commitment. Accordingly, we conclude that the complete absence of procedures deprived Carver of his liberty interest in transfer to community custody without due process of law.

## B. Qualified Immunity

**[7]** Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Our qualified immunity analysis proceeds in two parts. First, we consider whether "the facts alleged show that [Lehman's] conduct violated a constitutional right[.]" *Galen*, 477 F.3d at 658-59 (citing *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001)). For the reasons discussed above, we answer this question in the affirmative. Second, we ask if "the right [Lehman is] alleged to have violated [was] clearly established such that a reasonable [official] would have understood that he was violating that right[.]" *Id.* We conclude that the answer to this question is no.

**[8]** In determining whether the right alleged to have been violated was clearly established, we must consider the right "in light of the specific context of the case, not as a broad general proposition[.]" *Saucier*, 533 U.S. at 201. " 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Here, because section 9.94A.728(2)(d) does not use the more common mandatory term "shall," a reasonable correctional official might not have

understood that the Washington statutory scheme created a liberty interest in early release into community custody. Certainly, the question was highly debatable at the time that Lehman was required to act. Carver's plan was denied before the Washington Court of Appeals had issued its decisions in *Dutcher* and *Liptrap*, which clarified that not only does a limited liberty interest exist under state law, but that the DOC's discretion to deny release into community custody is limited to rejection of a plan on the basis of the legitimate statutory criteria set forth in section 9.94A.728(2)(d).

**[9]** Because we conclude that the right at issue here was not sufficiently clear at the time of the facts giving rise to this case such that a reasonable official would understand that denying a release plan without providing a legitimate statutory reason for that denial would violate due process, we affirm the district court's grant of qualified immunity.

### III.   Conclusion

Washington state law creates a liberty interest in an inmate's early release into community custody that is protected under the Due Process Clause of the Fourteenth Amendment. Carver was denied his due process right by the state officials' refusal to approve his release plan without reviewing it on its merits. At the time, however, the due process right arising from the existence of his liberty interest was not sufficiently clearly established to meet the *Saucier* standard. We therefore affirm the district court's determination that Lehman is entitled to qualified immunity.

**AFFIRMED.**

---

MILAN D. SMITH, JR., Circuit Judge, concurring in the judgment:

I respectfully part ways with the majority. I do not believe that Washington State law creates a Fourteenth Amendment

liberty interest in early release into community custody. The majority erroneously conjures a statutory liberty interest, protected by the Due Process Clause, out of Wash. Rev. Code § 9.94A.728(2) only by confusing "may" and "shall" and by reading "if" to mean "only if."

## I.

"The preeminent canon of statutory construction requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd. v. United States,* 541 U.S. 176, 183 (2004) (internal quotation marks and alterations omitted). Far from using "the more traditional mandatory language formula used in other early release statutes," Maj. Op. at 6523, section 9.94A.728(2)(d) instead uses traditional *permissive* "may . . . if" language used in statutes that create no liberty interest. Had the Washington State Legislature meant to write a statute limiting the discretion of the DOC, it could easily have said so. Section 9.94A.728(2)(d) states that the DOC "may deny" convicted sex offenders transfer to community custody "if" it makes certain determinations about the offender's proposed release plan. It says nothing about the criteria for *granting* the request, let alone detailing circumstances under which the DOC must do so.

The majority overcomes the legislature's failure to specify any criteria for granting a request by holding that the determinations mentioned in section 9.94A.728(2)(d) are the only conditions on which the DOC may deny transfer, and therefore *requiring* that it grant in all other cases. Maj. Op. at 6523-24. One searches the statute in vain, however, for any indication that those determinations are the *exclusive* reasons that the DOC "may deny" transfer. The criteria of section 9.94A.728(2)(d) are *sufficient* to deny sex offenders transfer, but are not *necessary*. Had the legislature wished to make

them necessary, it would have used not "if" but "only if," or some semantic equivalent.[1]

In some cases, a court may read the word "if" to mean "only if." The canon of construction *expressio unius est exclusio alterius* stands for the proposition that, when the legislature provides a list of related items, it impliedly means to exclude other items. *See* Norman J. Singer, 2A Sutherland Statutes and Statutory Construction § 47:23 (7th Ed. 2007). Such a result obtains, however, only where there is some reason to believe that the legislature intended that the enumeration be exclusive—or at the very least in the absence of evidence to the contrary. "The maxim *expressio unius est exclusio alterius* is an aid to construction, not a rule of law. It can never override clear and contrary evidences of [legislative] intent." *Neuberger v. Comm'r*, 311 U.S. 83, 88 (1940); *see also Wash. State Labor Council v. Reed*, 65 P.3d 1203, 1209 (Wash. 2003) ("[T]he rule of *expressio unius est exclusio alterius* d[oes] not necessarily apply without considering

---

[1]It is true that there are no magic words necessary for the legislature to create a liberty interest. *Bd. of Pardons v. Allen*, 482 U.S. 369, 378 (1987). There are any number of other ways the legislature might have accomplished the result the majority reads into section 9.94A.728(2)(d). It might have said the DOC "shall" grant release "unless" the criteria are met or "if" they are not; it might have said that it "may" deny release "only if" the criteria are met, or "except in the event" they are not; it might have come up with another formulation that means substantially the same thing.

The distinction between "if" and "only if," however, is not a mere quibble over vocabulary—it goes right to the heart of whether the criteria of section 9.94A.728(2)(d) are necessary or sufficient conditions for transfer, and therefore whether transfer is mandatory or entirely discretionary. "May . . . *only* if" would be effectively identical to "shall . . . unless "; "may . . . if" is not. *Contra* Maj. Op. at 6523-24. In formal terms, the majority commits the fallacy of denying the antecedent: from the premise "if P, then Q," it does not follow from "not P" that "not Q." *See generally* Ruggero J. Aldisert, *Logic for Lawyers* 160-61 (3d ed. 1997); Bruce N. Waller, *Critical Thinking* 112-13 (5th ed. 2005); Wikipedia, Denying the antecedent, *available at* http://en.wikipedia.org/wiki/Denying_the_antecedent (Last accessed May 30, 2008).

other factors which may persuade the court that legislative intent was the opposite of what the statutory construction rule would require."). In this case, however, the majority uses the technique *sub silentio* to override the unambiguously discretionary language in the statute ("may").

The language of Wash. Rev. Code section 9.94A.728(2)(d) makes it clear that the provision's purpose is to *expand* the discretion of the DOC. This makes the majority's implicit *expressio unius* reading especially inappropriate. The statute states: "The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement." Wash. Rev. Code § 9.94A.728(2)(d). That language makes the function of section 9.94A.728(2)(d) apparent: to preserve to the DOC the discretion to deny transfer in the event that it makes one of the four determinations, notwithstanding what other legal sources might otherwise require. The majority's reading of the statute, however, turns that meaning on its head, transmuting a *non obstante* provision written to *preserve* or *expand* discretion into one with the effect of *limiting* it.

## II.

I might still concur with this misreading of section 9.94A.728(2)(d), however, if the Washington State courts had similarly misread the statute. *See Bergen v. Spaulding*, 881 F.2d 719, 721 (9th Cir.1989) ("Whether a state statute provides such a protectable entitlement depends on the structure and language of the statute, *as well as the state courts' interpretation of the scope of the interest*.") (emphasis added). But, notwithstanding the majority's characterization of state precedent, they have not.

The majority quotes language from Washington intermediate appellate courts recognizing a "limited liberty interest" in early release. Maj. Op. at 6524 (quoting *In re Liptrap*, 111

P.3d 1227, 1231 (Wash. Ct. App. 2005); *In re Dutcher*, 60 P.3d 635, 636 (Wash. Ct. App. 2002); *In re Crowder*, 985 P.2d 944, 944-45 (Wash. Ct. App. 1999)). What the majority omits is the *nature* of that state "liberty interest." In both *Liptrap* and *Dutcher*, the Washington court's holding concerned only the inmate's *procedural right* to have his proposal considered on the merits, rather than a substantive *right to transfer*.[2] *Liptrap*, 111 P.3d at 1234; *Dutcher*, 60 P.3d at 638. This was based, in large part, on the only truly mandatory language found in section 9.94A.728(2), mandating that the DOC "shall . . . require the offender to propose a release plan." Wash. Rev. Code § 9.94A.728(2)(c); *see Dutcher*, 60 P.3d at 638. Unfortunately, "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause" of the Fourteenth Amendment. *Olim v. Wakinekona*, 461 U.S. 238, 250-51 n.12 (1983); *see also In re Cashaw*, 866 P.2d 8, 12 (Wash. 1994) ("The United States Supreme Court and the Ninth Circuit have clearly held that procedural laws do not create liberty interests; only substantive laws can create these interests."). Washington State law permits prisoners to challenge DOC violations of parole procedures, but it grounds this right to process in *state* law, not in the federal constitution.[3] While the DOC has, therefore, no "discretion to

---

[2]*Crowder*, decided in 1999, predated the 2002 enactment of the statute supposedly creating the liberty interest at issue in this case. *Liptrap*, 111 P.3d at 1232 & n.3.

[3]*See Cashaw*, 866 P.2d 8, 13 (Wash. 1994) ("The Court of Appeals was correct in concluding the Board had violated its own procedural rules for parolability hearings . . . . Where the Court of Appeals erred was in taking the additional step of concluding this violation was of constitutional magnitude."). *Cashaw* instead held that the inmate's right to challenge his restraint because of procedural error is grounded in Washington Rule of Appellate Procedure 16.4. *Id*. at 13-14. Notwithstanding the holding of *Cashaw*, *Dutcher* refers to an inmate's "protected liberty interest" in "the department's compliance with requirements of statute affecting his release," citing *Cashaw* itself for the proposition. 60 P.3d at 636 & n.3 (citing *Cashaw*, 866 P.2d at 11).

As the majority notes, *Dutcher* "recognizes a liberty interest in *both* the substantive right to early release . . .and the distinct procedural right to

*decide whether or when* to consider an offender for transfer to community custody," *Liptrap*, 60 P.3d at 638 (emphasis added), Washington's courts have given no indication that its discretion is substantially limited in *how* it makes that consideration.

None of the cases cited by the majority implies that the criteria in section 9.94A.728(2)(d) are the *exclusive* reasons that the DOC may deny transfer to community custody. *Liptrap* notes that the statute "stat[es] reasons why the department may deny a release plan," 111 P.3d at 1232, but those "reasons" are kept in the indefinite: they are just "reasons"— not *the* reasons, let alone *the only* reasons—for denial. Similarly, *Dutcher* held that "the statute . . . requires DOC to base its community custody eligibility decisions on the merits of the release plan," 60 P.3d at 638, but does not imply that section 9.94A.728(2)(d) provides the sole rubric by which those "merits" are to be evaluated.

---

have the DOC comply with the requirements of the statutes governing such release." Maj. Op. at 6524-25 n.13 (emphasis added). Because *Dutcher*'s holding concerns only the latter, procedural right, its description of the former can only be described as dicta. As with much dicta, it risks imprecision, using the same term, "liberty interest," to refer both to the substantive interest in transfer, which could conceivably be a Fourteenth Amendment "liberty interest," and the procedural right to compliance with regulation, which cannot. If a chef announces that the dessert will consist of "fruit," but in the very next breath lists "herring" and "quartz" as other kinds of "fruit," one might be forgiven in beginning to doubt that the dish's ingredients have necessarily been plucked off a tree.

Notwithstanding its use of traditional Due Process Clause terminology and concepts, therefore, the only charitable reading of *Dutcher*, not squarely foreclosed by both United States and Washington State Supreme Court precedent, is that the Washington Court of Appeals is using "liberty interest" far more broadly than the term of art of federal Due Process jurisprudence that the majority contemplates, encompassing any right cognizable at law with some bearing on whether one receives liberty. No other reading is possible in light of precedent that has held that a right to process is no more a Fourteenth Amendment "liberty interest" than a herring is a fruit. *Olim*, 461 U.S. at 250-51 n.12; *Cashaw*, 866 P.2d at 12.

Washington courts have implied only one limit on the substance of the DOC's exercise of discretion: its reasons for denial must be "legitimate." *Id.* But contrary to the majority's assertions, there is no indication that a reason may acquire "legitimacy" only by its enumeration in section 9.94A.728(2)(d). Indeed, there is every indication to the contrary: it was *Crowder*, a decision predating the enactment of section 9.94A.728(2)(d) by three years, that first mentioned "legitimate reasons" for denial of community custody. 985 P.2d at 946. Moreover, *Crowder* specified the petitioner's "own withdrawal of a suggested placement plan" as among the "legitimate reasons" for denying him transfer, *id.*—a reason which certainly seems legitimate, but appears nowhere in section 9.94A.728(2)(d). Neither *Dutcher* nor *Liptrap* hint that subsequent codification of certain legitimate reasons has somehow narrowed the range of legitimacy, and no Washington case has provided a general definition for what makes a reason "legitimate," which could be as broad as "any reason not otherwise proscribed by law."[4] This ill-defined "right" to transfer only in the absence of some "legitimate" reason to deny is hardly sufficient to produce the "legitimate expectation of release" required of a protected liberty interest under *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex*, 442 U.S. 1, 12 (1979). Washington case law, in short, provides no reason for us to disregard the text and manifest purpose of section 9.94A.728(2).

*       *       *

For the reasons set forth above, I would join the two district courts and two panels of this court, *see* Maj. Op. at 6526 n.14, that have all held that section 9.94A.728(2) does not create a liberty interest protected by the Due Process clause of the Fourteenth Amendment. I would therefore not reach the issue

---

[4]Under such a reading, the DOC, for example, could not deny transfer to someone on account of his race or religion. Such a condition may limit the DOC's discretion, but scarcely enough to give rise to any "expectation" of transfer.

of whether the "right" announced today was "clearly estab-lished."