**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEWIS HAGGARD,<br>　　　　　*Petitioner-Appellee,*<br><br>　　　　　v.<br><br>BEN CURRY, Warden,<br>　　　　　*Respondent-Appellant.* | No. 10-16819<br><br>D.C. No.<br>3:06-cv-07658-SI<br>Northern District of<br>California,<br>San Francisco<br><br>ORDER<br>AMENDING<br>ORDER AND<br>DENYING<br>MOTION FOR<br>RECONSIDERA-<br>TION EN BANC<br>AND AMENDED<br>OPINION AND<br>ORDER |

Filed October 12, 2010
Amended December 9, 2010

Before: Richard R. Clifton, Jay S. Bybee and
Sandra S. Ikuta, Circuit Judges.

Per Curiam Opinion

19633

## COUNSEL

Steven G. Warner, Deputy Attorney General, Office of the California Attorney General, San Francisco, California, for the appellant.

Steve M. Defilippis, Picone & Defilippis, San Jose, California, for the appellee.

## ORDER

The panel has voted to deny the petitioner's motion for reconsideration en banc. Pursuant to General Order 6.11, the full court has been advised of the Motion for Reconsideration En Banc, and no judge has requested a vote on whether to rehear the matter en banc.

The Motion for Reconsideration En Banc is accordingly DENIED, and the court's Order of October 12, 2010 is AMENDED to appear as set forth below. No further motions for reconsideration or reconsideration en banc will be considered.

## OPINION AND ORDER

PER CURIAM:

In this case, the California Board of Parole Hearings ("Board") denied state prisoner Lewis Haggard's request for release on parole, and the state court upheld the parole denial. In his federal habeas petition, Haggard argued that the Board's decision was erroneous because the record lacked evidence of his current dangerousness. The district court agreed, and ordered the state to release Haggard while the state's appeal of the district court's decision was pending. The

state moved for a stay of the release order. Because a prisoner who receives a defective parole denial determination from the Board is entitled under California law only to a new parole decision, we conclude that the state will likely prevail on its claim that the district court erred in ordering Haggard's immediate release. We therefore grant the state's stay motion.[1]

I

In 1979, Lewis Haggard was convicted in California state court of kidnaping for the purpose of committing robbery. He received a sentence of seven years to life in state prison. The Board denied Haggard parole on twelve occasions. In February 2004, the Board issued its thirteenth denial. In its decision, the Board determined that Haggard was "not yet suitable for parole, and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." The Board based this conclusion on a number of factors. It found that Haggard's commitment offense was carried out in a calculated and cruel manner that showed a lack of regard for the suffering of others and the life of others. Further, Haggard had a criminal history, and had exhibited continued negative behavior while in confinement. Next, the Board noted that while one psychological evaluation stated that Haggard was not a risk for future violence, a slightly earlier psychological evaluation stated that Haggard posed a "high risk of violence within the community or over the next ten years." Finally, the Board found that Haggard needed continued work on developing skills that would allow him to deal with stress in a non-destructive manner.

---

[1]While we generally do not issue published opinions when sitting as a motions panel, we have previously determined that in circumstances such as these, when we must promptly adjudicate a state's motion for stay of a prisoner's release on parole pending appeal during a time of rapid changes in the controlling state law, we may publish an opinion and order to clarify or explain the law we must apply. *See Pearson v. Muntz*, 606 F.3d 606, 608 n.2 (9th Cir. 2010); *see also* General Order 6.3(g)(3)(ii).

Haggard filed a habeas petition in state superior court, claiming that the Board's denial of release on parole violated his federal due process rights. The state court held that the Board had not abused its discretion in denying Haggard release on parole. Among other things, the state court rejected Haggard's argument that the Board had relied on the commitment offense alone in making its decision to deny a parole release date. The state court found that the record contained "some evidence" of current dangerousness that supported the Board's decision, and that the Board had considered the relevant factors, including the gravity of the commitment offense, Haggard's negative institutional behavior, and his psychological evaluations. Therefore, the court upheld the Board's denial of parole. The state appellate court and California Supreme Court summarily denied Haggard's habeas petition.

After exhausting his state remedies, Haggard filed a habeas petition in district court. The district court independently reviewed the evidence before the Board, and concluded that the circumstances of Haggard's offense, institutional history, and psychological evaluation did not constitute "some evidence" supporting the conclusion that Haggard's release would unreasonably endanger public safety. Therefore, the district court granted Haggard's habeas petition and ordered the Board to set a parole date for Haggard not more than 30 days from the date of the district court's decision. This order required the state to release Haggard on parole until the state's appeal of the district court's decision was finally resolved.

The state appealed the district court's order granting the petition and concurrently moved to stay that order pending appeal.[2]

---

[2]On September 30, 2010, this court entered a temporary stay of the district court's August 11, 2010 order, "pending further order of [this] court." Our decision today replaces that temporary stay.

## II

**[1]** We may reverse or modify a district court's decision to release a prisoner pending appeal of his successful habeas petition "for special reasons shown." Fed. R. App. P. 23(d); *Hilton v. Braunskill*, 481 U.S. 770, 774 (1987). Although there is a "presumption of release from custody" of a successful habeas petitioner pending appeal, *Hilton*, 481 U.S. at 774 (citing Fed. R. Civ. P. 23(c)), "it may be overcome if the traditional stay factors tip the balance against it." *Id.* at 777. Accordingly, we consider the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 776. The most important factor is the first, that is, whether the state has made a strong showing of likely success on the merits of its appeal of the district court's decision. *See id.* at 778.

In considering the state's likely success on the merits, we must apply the framework we have developed for the purpose of analyzing habeas petitions from California prisoners claiming that a parole denial violates their federal due process rights. We begin with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which precludes a federal court from granting a habeas petition unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). To apply this standard, a federal court must "look through unexplained state court decisions . . . to the last reasoned state court decision to address the claim at issue." *Medley v. Runnels*, 506 F.3d 857,

862 (9th Cir. 2007); *accord Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991). Here, the last reasoned state court decision was that of the state superior court, which upheld the Board's parole denial decision because the record included "some evidence" of Haggard's current dangerousness.

**[2]** We review a denial of parole through the lens of the federal Due Process Clause. *E.g.*, *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *see Bd. of Pardons v. Allen*, 482 U.S. 369, 373 & n.3 (1987). In general, parties claiming that their due process rights were violated must establish "two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)) (internal quotation marks omitted). While "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz*, 442 U.S. at 7, a state parole statute may create an "expectancy of release" on parole that "is entitled to some measure of constitutional protection," *id.* at 12. In other words, it is possible for an inmate to have a constitutionally protected liberty interest in parole, but only to the extent that state law creates that interest. *Id.*; *see Allen*, 482 U.S. at 373. Moreover, the state law giving rise to that liberty interest not only creates the interest but also defines its scope and prescribes its limits. *See, e.g.*, *Pearson v. Muntz*, 606 F.3d 606, 611 (9th Cir. 2010) (analyzing the California parole system to discern the scope of the prisoners' liberty interest in parole); *cf. Bishop v. Wood*, 426 U.S. 341, 344 & n.7 (1976); *Bergen v. Spaulding*, 881 F.2d 719, 721 (9th Cir. 1989) (looking to state law to define the scope of Washington state inmates' interest in parole).

When a California court upholds a parole denial decision, our precedents require us to determine whether such a denial was an unreasonable application of the decisions establishing

and defining the scope of that state-created liberty interest in parole. *See Pearson*, 606 F.3d at 611 (interpreting *Hayward v. Marshall*, 603 F.3d 546, 561-63 (9th Cir. 2010) (en banc)). In this vein, our recent en banc decision in *Hayward* relied on two 2008 California Supreme Court decisions, *In re Lawrence*, 190 P.3d 535 (Cal. 2008), and *In re Shaputis*, 190 P.3d 573 (Cal. 2008), to delineate the scope of the California prisoners' state liberty interest in parole. In *Lawrence* and *Shaputis*, the California Supreme Court "concluded that the standard governing judicial review of parole decisions made either by the Board or by the Governor is whether 'some evidence' supports the determination that a prisoner remains currently dangerous." *In re Prather*, 234 P.3d 541, 544 (Cal. 2010). The California Supreme Court also reaffirmed that the "some evidence" standard is a procedural protection required by the state constitution's due process clause, "because the inmate's due process interest in parole mandates a meaningful review of a decision denying parole." *Id.* at 252; *see also Lawrence*, 190 P.3d at 547-49, 552-54; *In re Rosenkrantz*, 59 P.3d 174, 203-05 (Cal. 2002).

Based on the rationale of *Lawrence* and *Shaputis*, we held that the procedural protection afforded to parole applicants by California's "some evidence" standard is part of the state-created liberty interest in parole that is protected by the federal Due Process Clause. *See Hayward*, 603 F.3d at 561-63; *see also Pirtle v. Cal. Bd. of Prison Terms*, 611 F.3d 1015, 1020 (9th Cir. 2010) (holding that California's liberty interest in parole "encompasses the state-created requirement that a parole decision must be supported by 'some evidence' of current dangerousness") (citations omitted). In light of this understanding, we concluded that a parole denial by the Board or Governor may violate a prisoner's federally protected due process right if the denial does not satisfy the state-created "some evidence" requirement, because that requirement is part of California prisoners' state-created expectation of parole release. *Hayward*, 603 F.3d at 561-63. If a state court

denies a prisoner's appeal of such a deficient ruling, we may grant the writ. *See Pearson*, 606 F.3d at 611-12.

**[3]** In sum, our precedent dictates that when a prisoner raises a claim that he or she has been deprived of the full scope of a state-created liberty interest in parole (including its procedural elements), and the state court rejects that claim, a federal court may grant the prisoner's habeas petition if it concludes that the state court's decision was an unreasonable application of the state's "some evidence" standard. *See id.*; *see also Pirtle*, 611 F.3d at 1020-25.

**[4]** After the California Supreme Court's decisions in *Lawrence* and *Shaputis*, and after our decisions in *Hayward, Pearson*, and *Pirtle*, which relied on them, the California Supreme Court issued *In re Prather*, 234 P.3d 541 (Cal. 2010), which further clarified the scope of a prisoner's state-created interest in parole. In *Prather*, the California Supreme Court explained that, under the California constitution, "[t]he power to grant and revoke parole is vested in the Department of Corrections, [an arm of the state executive,] not the courts." 234 P.3d at 550-52 (citations omitted). *Prather* continued:

> Thus, where the Department of Corrections has failed to accord a prisoner due process of law in revoking his parole, the relief to which the prisoner is entitled on habeas corpus is not an order forever barring the Department of Corrections from proceeding further, but, rather, an order directing the Department of Corrections to vacate its order of revocation and thereafter to proceed in accordance with [state] due process of law.

*Id.* (citation omitted). Said otherwise, *Prather* determined that where the Board denies parole without "some evidence" of current dangerousness, the prisoner in question is entitled under state law only to a new parole-suitability decision by

the Board,[3] *id.* at 553-54, and not to release from custody or a judicial parole determination. *See* 234 P.3d at 552 ("[A] prisoner is not entitled to have his term fixed at less than maximum or to receive parole, [but] he is entitled to have his application for these benefits duly considered based upon an individualized consideration of all relevant factors." (quoting *Lawrence*, 190 P.3d at 559)) (internal quotation marks omitted); *see id.* at 552-54 (applying the "some evidence" standard to two lower-court decisions, reversing those decisions, and ordering remand to the Board for a new parole-suitability determination). *Prather* thus represents a further refinement by the California Supreme Court of the scope of state prisoners' liberty interest in parole. Because *Prather* clarifies that a California prisoner's "right of personal liberty," *Pirtle*, 611 F.3d at 1025, does not encompass the right to release on parole if the Board denied parole without "some evidence" of current dangerousness, *Prather* corrects our prior implicit assumption that a federal habeas court could enforce California's state-created liberty interest by ordering the release of the prisoner. *Cf. id.*

**[5]** Given our duty to enforce liberty interests as they are defined by state law, *see Bergen*, 881 F.2d at 721; *see also Greenholtz*, 442 U.S. at 11-16, and because California has refined the scope of the liberty interest it has created in parole, *see Prather*, 234 P.3d at 547-52, we, too, must adjust our understanding of the scope of the interest protected under the federal Due Process clause. Just as we determined that the procedures mandated by *Lawrence* and *Shaputis* were part of

---

[3]At least one published California appellate opinion has addressed the issue of defective parole denials by the Governor rather than the Board, *see, e.g.*, *In re McDonald*, ___ Cal. Rptr. 3d ___, 2010 WL 4296703 (Ct. App. Nov. 2, 2010), and has held that reinstatement of the Board's release order, rather than remand to the Governor, is appropriate when the Governor's veto decision fails to meet the state's "some evidence" standard. *Id.* at *9-10. Because Haggard's parole request was denied by the Board rather than the Governor, we need not consider the contours of inmates' federally protected liberty interest in cases involving gubernatorial vetoes.

California's state-created liberty interest in parole, *see Pirtle*, 611 F.3d at 1020-21; *Cooke*, 606 F.3d at 1213-14, we must read *Prather*'s further revision to those procedures as necessarily limiting the state-created liberty interest in parole under California law, *see* 234 P.3d at 547-52. We therefore hold that where the Board's parole denial decision is not based on "some evidence" of current dangerousness, the California-created, but federally enforceable, liberty interest in parole gives the prisoner only the right to a redetermination by the Board consistent with the state's "some evidence" requirement, not the right to release on parole.

## III

Having determined the scope and extent of the state-created liberty interest at issue, we now turn to the state's motion in light of the first and most important of the *Hilton* factors: whether the state is likely to succeed in its argument that the district court erred in granting Haggard's habeas petition and ordering the state to release Haggard on parole.

The state makes three main arguments. First, the state argues that the "some evidence" requirement is a state-created procedure that is not part of the state liberty interest in parole, and is not a procedural protection required under *Greenholtz* as a matter of federal due process. We have already rejected this argument. *See Pearson*, 606 F.3d at 608-10.

[6] Second, the state argues that the district court erred by failing to apply *Prather*'s revised scope of the parole liberty interest, which requires that Haggard be afforded only a new parole suitability determination, not unconditional release. According to the state, the district court should have deferred to the Board's authority in determining Haggard's parole suitability instead of usurping that power and granting parole for Haggard. We agree. Even assuming that the district court was correct in undertaking an independent review of the record and holding that the Board's parole denial decision was not

supported by "some evidence" (a conclusion it reached not-withstanding evidence of factors in addition to Haggard's commitment offense), *Prather* makes clear that the state-created liberty interest in this context does not encompass actual release. Instead, where the Board errs in applying the "some evidence" standard, the *only* expectation a prisoner has under California law is that of a new, properly conducted parole-suitability determination by the Board; setting aside the Governor's veto authority, no other organ or entity in the State of California has the statutory or constitutional authority to prescribe an end date to a prisoner's indeterminate sentence. Accordingly, even if the district court was correct in determining that the Board's decision was not based on "some evidence," the Board's error deprived Haggard only of the state-created liberty interest in a proper parole determination by the California executive.[4] Although "[f]ederal courts have the latitude to resolve a habeas corpus petition 'as law and justice require,' " *Pirtle*, 611 F.3d at 1025 (quoting 28 U.S.C. § 2243), a federal habeas court addressing an alleged due process violation may not grant a remedy that exceeds the bounds of the liberty interest, as that interest is actually defined and limited by the state. *See Bergen*, 881 F.2d at 721; *see also Greenholtz*, 442 U.S. at 12. The district court erred in concluding otherwise and in granting relief that exceeded the scope of the liberty interest created by the state. Due to these errors, the state will likely succeed on the merits of its appeal of the district court's order.[5]

---

[4]Because the state will likely succeed on its claim that Haggard had no entitlement to release on parole, we need not address the state's prospects for success on its broader claim that the district court erred in its AEDPA analysis of the state court's ruling.

[5]Because we decide on this ground, we need not reach the state's third argument: that the district court erred in retroactively applying the "some evidence" standard established by the California Supreme Court's 2008 decisions in *Lawrence* and *Shaputis* to the California superior court's 2005 decision at issue here.

IV

The remaining *Hilton* factors support granting a stay. *See* 481 U.S. at 776. The issuance of a stay does not irreparably injure Haggard because he is not entitled to immediate release under California law; rather, he is entitled only to a new parole-suitability determination that will proceed in keeping with the state's due process requirements. *See Prather*, 234 P.3d at 552. Nor does the record reflect that issuing a stay will substantially injure any other party interested in the proceeding. Finally, the public interest weighs in favor of a stay. The parole release decision requires "purely subjective appraisals that turn on a discretionary assessment of a multiplicity of imponderables," *Hayward*, 603 F.3d at 557 (internal quotation marks omitted), including the key determination whether "an inmate continues to pose a threat to public safety," *Prather*, 234 P.3d at 552. California has determined that the public interest is best served when the decision on this crucial issue is made by the Board, after a hearing and testimony from the prisoner, with veto power vested in the Governor. *See id.* at 552-54. We defer to the state's reasonable determination as to where the public interest lies in California, and agree that in this case it lies in allowing the responsible state agency to determine Haggard's parole suitability in a procedurally proper proceeding.

[7] Because the state is likely to succeed on the merits of its appeal of the district court's order, and because the other *Hilton* factors weigh in the state's favor, we grant the state's motion for a stay pending appeal of the district court's August 11, 2010 order directing Haggard's release on parole.

**GRANTED.**