**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRED MCCULLOUGH,
        *Petitioner-Appellee,*

v.

ANTHONY KANE,
        *Respondent-Appellant.*

No. 07-16049

D.C. No.
CV-05-02207-MHP

OPINION

Appeal from the United States District Court
for the Northern District of California
Marilyn H. Patel, Senior District Judge, Presiding

Argued and Submitted December 3, 2007
Withdrawn December 4, 2007
Resubmitted December 27, 2010
San Francisco, California

Filed December 27, 2010

Before: Betty B. Fletcher, Marsha S. Berzon, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge B. Fletcher;
Dissent by Judge Rawlinson

**COUNSEL**

Daniel Henry Bookin, O'Melveny & Myers LLP, San Francisco, California, Attorney for the petitioner-appellee.

Amber N. Wipfler, Office of the California Attorney General, San Francisco, California, Attorney for the respondent-appellant.

**OPINION**

B. FLETCHER, Circuit Judge:

In 1983, at the age of 21, Fred McCullough was convicted of murder and sentenced to 15 years to life in prison. While in prison, McCullough earned his GED, his associate's degree, and his bachelor's degree in social work. He participated in a juvenile offender deterrent program, helping to keep children out of trouble. He obtained job training and excelled in his employment placements. He successfully rehabilitated himself to the point where his most recent psychological evaluations indicate he is less likely to commit violence than the average community citizen. Twice, the California Board of Prison Terms recommended McCullough for parole, once in 2002 and again in 2004. Twice, the governor of California reversed that decision.

In 2007, the district court found that Governor Arnold Schwarzenegger's 2004 reversal of McCullough's parole recommendation was not supported by "some evidence" of future dangerousness and granted McCullough's federal habeas petition. The state appealed and we ordered McCullough released pending his appeal while we awaited two California Supreme Court decisions concerning parole recommendations and reversals. During that time, our court agreed to rehear en banc *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008), to determine our ability to review such claims contained in a federal habeas corpus petition. *See Hayward v. Marshall*, 527 F.3d 797 (9th Cir. 2008). The en banc court issued an opinion in *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc). While the courts sorted out the law, McCullough began his life outside prison. Within two months of his release he obtained employment at a furniture manufacturing company in Gardena, California. McCullough's manager at that store has reported to this court that, over the past two years, McCullough has made outstanding contributions to the company and been promoted to supervisor.

We now decide whether the governor's 2004 reversal of McCullough's parole recommendation violated due process; we hold that it did. Our decision is consistent with *Hayward v. Marshall* and other prior and subsequent cases holding that we have jurisdiction to review the "some evidence" determination under California law. *Hayward*, 603 F.3d at 562-63. We thus affirm the district court's decision granting McCullough's habeas corpus petition.

## I.

One night in July 1982, McCullough hit John Kukish, a man sleeping in his car, in the head two or three times with a brick. The blows killed him. McCullough then stole the money from Kukish's wallet to buy drugs. McCullough was found guilty of murder and sentenced to 15 years to life in prison. During his first few years in prison, McCullough

struggled to adjust. He had several disciplinary violations for failing to follow orders and numerous minor infractions. Eventually he decided to turn things around. He began to work toward his GED, which he earned in 1986. He next started taking college courses, earning his associate's degree and then his bachelor's degree in social work in 1991. He developed vocational skills, working as a wood finisher and obtaining his certificate as a forklift operator, among other achievements. His supervisors described him as possessing a good work ethic, rated him as exceptional, and entrusted him with the responsibility of training other prisoners in the workforce. McCullough participated in self-help programs, including Alcoholics Anonymous. He stated during his parole hearing that the most valuable part of the 12-step program was step four, where he took a "personal inventory" to figure out why he ended up in prison and what he could change. McCullough also volunteered for the juvenile offender deterrent program, speaking to children to help steer them away from a life of crime.

In 2002, the California Board of Prison Terms found McCullough suitable for parole, a decision which then-Governor Gray Davis reversed. Again in 2004, the Board recommended McCullough for parole. Governor Schwarzenegger reversed that recommendation in an August 12, 2004 decision.

In his 2004 decision, Governor Schwarzenegger found McCullough would pose an unreasonable risk of danger to society upon release. In his decision, the governor referenced to McCullough's "escalating criminality," which included assaultive behavior as a juvenile, and McCullough's prison disciplinary record of a handful of "serious-rules violations" and counseling for 28 incidents of minor misconduct. The governor also stated, however, that McCullough had no previous record as an adult before his incarceration, that he had "demonstrated considerable progress and increased maturity by remaining discipline-free since 1985," and that he "worked

during his 21-year incarceration to enhance his ability to function within the law upon release," noting that McCullough had earned a GED, associate's and bachelor's degrees, had acquired vocational training and skills, and had availed himself of self-help and therapy. The governor's decision found that "McCullough has favorable staff reports and mental-health evaluations, seems to fully accept responsibility and express remorse for his crime, and has made some legitimate plans for himself upon parole."

Ultimately, however, the governor relied upon McCullough's commitment offense to find him unsuitable for parole. The Governor explained that "McCullough committed an especially heinous second-degree murder because he preyed upon and bludgeoned a sleeping, unsuspecting, and unthreatening man — ultimately killing him — for the remarkably trivial motive of stealing his money." The governor further found that the manner was especially vicious because "[n]ot only did he not need to beat the sleeping Mr. Kukish to rob him, Mr. McCullough had a clear opportunity in between each blow to Mr. Kukish's head to stop but did not do so." In addition, the decision noted that the murder was carried out in the commission of a planned robbery and that McCullough was originally convicted of first-degree murder. The governor concluded that "[t]he nature and gravity of the second-degree murder committed by Mr. McCullough alone is a sufficient basis on which to conclude his release from prison at this time would put society at an unreasonable risk of harm."

McCullough sought relief from the governor's reversal in state court. The primary decision, the one issued by the Los Angeles County Superior Court, held that the record contained "some evidence" to support the governor's finding that McCullough was not suitable for parole. The state court held that the governor properly could have denied parole based solely on the commitment offense, because the circumstances of the crime were more than the minimum necessary to sustain a conviction for second-degree murder. It also determined

that the governor's decision rested in part on the extreme indifference to human life and the trivial motive for the crime, but found these assertions unsupported in the record. Finally, the Superior Court decision contained some puzzling references to material not in Governor Schwarzenegger's decision. For instance, the Superior Court decision stated that the governor had concluded that McCullough was unsuitable in part "because he has demonstrated a lack of remorse for the offense and minimizes his responsibility" and "insufficiently participated in self-help programming," when, in fact, the governor's 2004 decision stated exactly the opposite. Nonetheless, the court determined that "even if the governor's conclusion was based on the commitment offense alone, which it is not, there is no due process violation." Based on its findings, the state court denied the petition.

The California Court of Appeal denied McCullough's petition for a writ of habeas corpus in a one-sentence order. The California Supreme Court summarily denied his petition for review. McCullough then filed his federal habeas petition, asserting that his right to due process had been violated. The district court granted the petition and ordered McCullough released from custody in a June 1, 2007 order, holding there was not "some evidence" to support the California governor's reversal of McCullough parole recommendation. The state timely appealed on June 7, 2007.

## II.

We review de novo the district court's decision granting the petition for habeas corpus. *Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may not grant a writ of habeas corpus unless the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Because the state appealed, no certificate of appealability is necessary. Fed. R. App. Proc. 22(b)(3).

**[1]** In its initial briefing, before we issued the en banc decision in *Hayward*, the state argued that the district court lacked jurisdiction to consider whether there was "some evidence" to support the government's decision to deny McCullough's parole. *Hayward* addressed this issue, considering "whether, even if there is no general federal quantum of evidence requirement, applicants for parole in California, under the state's current laws, may obtain federal habeas review of whether there is 'some evidence' supporting a negative parole decision." *Hayward*, 603 F.3d at 549. *Hayward* answered this question "yes" and proceeded to review the state court decision with AEDPA deference. *Id.* at 562-63.

**[2]** As *Hayward* recognizes, "[a]lthough the due process clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law may supply a predicate for that conclusion." *Hayward*, 603 F.3d at 561. Prior to *Hayward*, we held in several cases that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002); *see also Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) ("California Penal Code section 3041 vests Irons and all other California prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause."); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) (same); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) ("Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process Clause."). "Stated simply, 'a State creates a protected liberty interest by placing

substantive limitations on official discretion.' " *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). Thus, "a State creates a liberty interest . . . by establishing 'substantive predicates' to govern official decision-making, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 360, 472 (1983)).

**[3]** *Hayward* explained that, in California, a state parole system encompasses the right to parole in the absence of some evidence of future dangerousness. *Hayward*, 603 F.3d at 562 ("[A]s a matter of state law, 'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California."). The state regulatory, statutory, and constitutional provisions that govern parole decisions in California mandate that conclusion. *See In re Rosenkrantz*, 59 P.3d 174, 201-03 (Cal. 2002). The "some evidence" standard, therefore, reflects the "substantive limitation[ ] on official discretion," *Thompson*, 490 U.S. at 462, that gives rise to a liberty interest protected by the Fourteenth Amendment. *See Cooke v. Solis* 606 F.3d 1206, 1213 (9th Cir. 2010) ("California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state."); *Pearson v. Muntz*, 606 F.3d 606, 611 (9th Cir. 2010) ("In California, the 'some evidence' requirement is a component of that liberty interest.").

We previously have held that we review denials of parole for California inmates under the "some evidence" standard. *Irons*, 505 F.3d at 851 ("[W]e assess whether a state parole board's suitability determination was supported by 'some evidence' . . . ."); *Sass*, 461 F.3d at 1129 (applying the "some evidence" standard because otherwise "a state could interfere with a liberty interest — that in parole — without support or in an otherwise arbitrary manner"); *Biggs*, 334 F.3d at 915 ("[T]he requirements of due process are satisfied if 'some evidence' supports the decision."). *Hayward* overruled this line

of cases "[t]o the extent . . . [they] might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release," but not otherwise. *Hayward*, 603 F.3d at 555. But insofar as our prior precedents held that California law created "an enforceable right to parole" that is governed by California's "some evidence" standard, they remain good law.

**[4]** In sum, "[w]hen a California court upholds a parole denial decision, our precedents require us to determine whether such a denial was an unreasonable application of the decisions establishing and defining the scope of that state-created liberty interest in parole." *Haggard v. Curry*, ___ F.3d ___, 2010 WL 4978842, at *3 (9th Cir. 2010) (per curiam). Although we might debate whether we classify the substantive restriction of California's "some evidence" standard as an element of the state-created liberty interest, or as part of the process that is due to protect the liberty interest, or both, the result is identical. Here, in both circumstances, we review McCulloch's parole denial for "some evidence" of future dangerousness.

## III.

We now analyze McCullough's claims as provided for in *Hayward*, "decid[ing] whether the California judicial decision approving the governor's decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.' " *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254). We hold that the governor's decision does not offer "some evidence" that McCullough poses an unreasonable risk of future dangerousness and that, therefore, the state court decision upholding the 2004 governor's decision was "an unreasonable determination of the facts in light of the evidence." *Id.*

As a threshold matter, the district court determined that no reasoned state court decision existed and reviewed McCul-

lough's claim de novo. The district court reached this conclusion because numerous statements in the Superior Court decision do not accurately reflect the contents of the 2004 governor's decision. Indeed, in some instances, the Superior Court's description of the governor's bases for reversing McCullough's parole recommendation flatly contradicts the very terms of the decision the state court was purporting to describe. To determine whether the state courts ever reached the merits of a federal claim, we "look through" unexplained state court decisions, such as summary denials, to the last reasoned state court decision. *Pirtle v. Cal. Bd. of Prison Terms*, 611 F.3d 1015, 1020 (9th Cir. 2010). If the state court does not reach the merits of the claim, "there is no state court decision on this issue to which to accord [AEDPA] deference." *Id.* (internal citation omitted, alteration in original).

We find it unnecessary to determine whether the state court decision is a reasoned application of the law for purposes of AEDPA because, even applying AEDPA deference, the state court decision was "an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2). The state argues that the governor found that McCullough's crime was especially heinous, that the motive was trivial, and that McCullough exhibited an escalating criminality at a young age that peaked with his conviction for the commitment offense at age 20. While it is true that the governor's decision referenced these factors, the governor relied upon the commitment offense to reverse McCullough's parole recommendation. The 2004 decision does list escalating criminality as "a negative factor weighing against Mr. McCullough's parole," but then proceeds to highlight McCullough's numerous rehabilitative accomplishments as "factors supportive of parole for Mr. McCullough." In the final paragraph of the 2004 decision, the governor concluded "[t]he nature and gravity of the second-degree murder committed by Mr. McCullough alone is a sufficient basis on which to conclude his release from prison at this time would put society at an unreasonable risk of harm." The state court determination that "even if the gov-

ernor's conclusion was based on the commitment offense alone, which it is not, there is no due process violation" was therefore unreasonable.

**[5]**  In *In re Lawrence*, 190 P.3d 535 (Cal. 2008), a decision we awaited to decide this case, the governor issued a similar decision. There, the California Supreme Court concluded that:

> Although the Governor alluded to other possible grounds for denying petitioner's parole, he expressly relied only upon the nature of petitioner's commitment offense to justify petitioner's continued confinement, because "the gravity alone of this murder is a sufficient basis on which to conclude presently that [petitioner's] release from prison would pose an unreasonable public-safety risk."

*Id.* at 560. The governor's 2004 decision here did the same thing: it alluded to McCullough's juvenile crimes and early disciplinary problems, but expressly relied on the commitment offense to deny parole. As was true in *Lawrence*, McCullough's "due process and statutory rights were violated by the Governor's reliance upon the immutable and unchangeable circumstances of her commitment offense in reversing the Board's decision to grant parole." *Id.*[1] Accordingly, we affirm the district court's decision granting McCullough's habeas corpus petition.

---

[1] The dissent disagrees with this conclusion. It argues that our reliance on *Lawrence* is not appropriate and that we should instead follow *Irons*, which upheld "a virtually identical rejection of parole." Dissent at 20627. This contention is unpersuasive, as it ignores *Hayward*'s reliance on *Lawrence*'s refinement of the substantive standard applied in parole hearings. In contrast to when Irons was decided, that standard now dictates that the nature of the crime of conviction "does not in and of itself provide some evidence of *current* dangerousness to the public." *Lawrence*, 190 P.3d at 555.

## CONCLUSION

**[6]** McCullough serves as an example of how imprisonment can achieve the goal of rehabilitation. After committing murder as a very young man, McCullough turned his life around in prison. He became sober and excelled in his vocational training. He obtained not only his GED, but also a college degree. He has been found to have a lower potential for violence than not merely the average inmate, but the *average community citizen*. The governor's decision reversing McCullough's recommendation for parole for the second time was not supported by "some evidence" of an unreasonable risk of future dangerousness. California law entitles McCullough to parole, *Lawrence*, 190 P.3d at 548, and due process dictates that result.

**AFFIRMED.**

---

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent. When deciding cases on habeas review, we apply federal law rather than state law. *See Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007), *reversed on other grounds in Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc). However, the majority opinion relies heavily on a decision from the California Supreme Court to support its holding. *See* Majority Opinion, p. 20623, quoting *In re Lawrence*, 190 P.3d 535 (Cal. 2008).

I am not persuaded that the majority's resolution of this case can be squared with our precedent.

In *Irons*, we addressed circumstances similar to those we address in this case. Irons was also convicted of murder and was sentenced to seventeen years to life imprisonment. At the time of the parole hearing at issue, Irons had been a model

prisoner for sixteen years. Irons had performed admirably during his prison employment. He completed several vocational training programs, and participated in self-help, substance abuse, violence prevention and stress management programs. *See Irons*, 505 F.3d at 849.

Despite Irons' exemplary prison record, he was repeatedly deemed unsuitable for parole. *See id*. at 849-50. The California Board of Prison Terms (Board) primarily relied on the "commitment offense itself" as the basis for denial. *Id*. at 850. More specifically, the Board determined that the crime "was carried out in an especially cruel and callous manner." *Id*. (internal quotation marks omitted). The Board also noted that the motive prompting the murder was trivial and that Irons was using drugs during the period when the murder was committed. *See id*.

Irons filed an unsuccessful administrative appeal and a fruitless state habeas petition. *See id*. However, Irons' federal habeas petition was granted on the basis that "the state court unreasonably applied clearly established Supreme Court precedent because the Board's decision was without evidentiary support . . ." *Id*. The district court also concluded that "the Board's continued reliance on Irons' commitment offense and prior conduct to deem him unsuitable for parole violated Irons' right to due process." *Id*.

On appeal, a panel of this court reversed the district court's decision. The panel applied the Supreme Court's articulated standard—whether the board's decision is supported by "some evidence in the record." *Id*. at 851 (citations omitted). The panel recognized that under California law an inmate's offense of conviction may serve as the basis for denying parole if "the Board can point to factors beyond the minimum elements of the crime for which the inmate was committed that demonstrate the inmate, will, at the time of the suitability hearing, present a danger to society if released." *Id*. at 663 (citation and internal quotation marks omitted). Some of the

factors enumerated by the panel that would meet the criterion included whether the offense was perpetrated calculatedly and dispassionately, *see id.*, whether the crime was committed in a manner demonstrating "an exceptionally callous disregard for human suffering"; and whether the motive was "inexplicable or very trivial in relation to the offense." *Id.* (citation omitted).

Applying these factors to Irons' parole request, the panel reversed the district court's decision granting habeas relief to Irons. In doing so, the panel relied heavily on our prior decision in *Sass v. California Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), *reversed on other grounds in Hayward*, 603 F.3d at 555. *See Irons*, 505 F.3d at 853-54. In *Sass*, the Board relied on the "total disregard for human suffering demonstrated by the manner of the offense and Sass' previous criminal history." *Sass*, 461 F.3d at 1126 (footnote reference and internal quotation marks omitted). In denying habeas relief, the *Sass* panel concluded that "evidence of Sass' prior offenses and the gravity of his convicted offenses constitute[d] some evidence to support the Board's decision." *Id.* at 1129.

Most recently, in *Hayward* we clarified that California law establishes the "some evidence of future dangerousness" standard as the "state sine qua non" for denial of parole in California. *Hayward*, 603 F.3d at 562. We cited *In re Lawrence*, the case treated as dispositive by the majority only for the proposition that the "some evidence" standard is used to determine whether the state court decision approving the governor's rejection of parole was unreasonable under 28 U.S.C. § 2254(d). *Id.* at 563 & nn. 104, 105. That a California court granted relief under state law in one case does not mandate relief for a different inmate. *See id.* Rather, we must examine the state court's analysis of the Governor's stated reasons for rejecting the parole request. *See id.* at 562-63, keeping in mind that "review of the Governor's decision is extremely

deferential." *Id.* at 562 (footnote reference and internal quotation marks omitted).

In reversing the grant of parole to McCullough, the Governor referenced the "especially heinous" nature of the murder-bludgeoning "a sleeping, unsuspecting, and unthreatening man repeatedly with a brick . . . for the remarkably trivial motive of stealing his money."

In *Irons*, the panel upheld a similar decision by the Governor, stating that:

> [Irons'] commitment offense, standing alone, is a sufficient basis for deeming a petitioner unsuitable where, as here there is some evidence to support a finding that the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and the motive for the crime is inexplicable or very trivial in relation to the offense.

*Irons*, 505 F.3d at 852-53 (citation and internal quotation marks omitted). In this circumstance, the *Irons* panel ruled that it could not "say that the state court unreasonably applied [the] same evidence principle. *Id.* (internal quotation marks omitted).

There is no principled way to distinguish this case from the facts in *Irons* and the holding that was left undisturbed by *Hayward*. The district court in this case expressly acknowledged that the Governor's determinations regarding the "especially heinous" nature of the crime and the trivial nature of the motive were undisputed. In light of the "extreme deference" due the Governor's undisputed determinations, *Hayward*, 603 F.3d at 562, and our precedent upholding a virtually identical rejection of parole, I would reverse the district court's decision granting habeas relief.